## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

SHERRY S. CHAMPION,         *
                          *

    Plaintiff,           *
                          *

vs.                      *      CIVIL ACTION NO. 16-00504-B
                          *

NANCY BERRYHILL,[1]        *
Acting Commissioner of Social  *
Security,              *
                          *

    Defendant.           *

## ORDER

Plaintiff Sherry S. Champion (hereinafter "Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq.*  On October 5, 2017, the parties consented to have the undersigned conduct any and all proceedings in this case.  (Doc. 17).  Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule

---

[1] Nancy Berryhill became the Acting Commissioner of Social Security on January 23, 2017.  Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Nancy Berryhill should be substituted for Carolyn W. Colvin as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

## I.    <u>Procedural History</u>[2]

Plaintiff filed her application for benefits on August 19, 2013, alleging disability beginning July 12, 2013, based on "restless leg syndrome, plate in right arm, rods in left arm, [and] major depression." (Doc. 12-5 at 2, 6; Doc. 12-6 at 2, 6). Plaintiff's application was denied and upon timely request, she was granted an administrative hearing before Administrative Law Judge Renee Blackmon Hagler (hereinafter "ALJ") on February 18, 2015. (Doc. 12-2 at 34). Plaintiff attended the hearing with her counsel and provided testimony related to her claims. (<u>Id.</u>). A vocational expert ("VE") also appeared at the hearing and provided testimony. (Doc. 12-2 at 57). On May 21, 2015, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (<u>Id.</u> at 16). The Appeals Council denied Plaintiff's request for review on September 1, 2016. (<u>Id.</u> at 2). Therefore, the ALJ's decision dated May 21, 2015, became the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). Oral argument

---

[2] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF.

was conducted on October 25, 2017 (Doc. 20), and the parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  Issues on Appeal

1. Whether substantial evidence supports the ALJ's assignment of little weight to the opinions of Plaintiff's treating physician?

2. Whether substantial evidence supports the Residual Functional Capacity ("RFC")?

## III. Factual Background

Plaintiff was born on September 12, 1967, and was forty-seven years of age at the time of her administrative hearing on February 18, 2015. (Doc. 12-2 at 38). Plaintiff graduated from high school and attended two years of college, after which she obtained a certificate for completing computer training. (Id. at 39).

Plaintiff last worked in July 2013 as a waitress at Ezell's Fish Camp and, prior to that, in 2012, she worked as a waitress at Old Mexico. (Doc. 12-2 at 40; Doc. 12-6 at 20). From 2010 to 2011, Plaintiff worked at the Clarke County Jail as a cafeteria worker. (Doc. 12-2 at 40; Doc. 12-6 at 20). From 2009 to 2010, she worked as an Assistant Manager at Dollar General, during which time her duties included unloading trucks and stocking shelves. (Doc. 12-2 at 40; Doc. 12-6 at 20). Prior to that, Plaintiff worked as the Night Manager for Old School Truck Stop,

during which time her duties included sweeping, mopping, and cleaning the bathrooms, as well as supervising other employees. (Doc. 12-2 at 41). She also worked as a Department Manager for Fred Stores and as a Customer Service Manager for Walmart. (Doc. 12-2 at 41).

Plaintiff testified that she can no longer work due to problems with her back and legs which prevent her from working positions involving heavy lifting and a lot of standing. (Doc. 12-2 at 42-43). Plaintiff further testified that her depression also prevents her from working. (Id. at 43). Plaintiff's medical treatments, consisting primarily of injections in her back and neck and medications, have provided her some relief. (Doc. 12-2 at 44).

## IV. **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[3] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir.

---

[3] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

## V.    Statutory and Regulatory Framework

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a

claimant has proven his disability. 20 C.F.R. §§ 404.1520, 416.920.

The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). At the fourth step, the ALJ must make an assessment of the claimant's RFC. See Phillips v. Barnhart, 357 F. 3d 1232, 1238 (11th Cir. 2004). The RFC is an assessment, based on all relevant medical and other evidence, of a claimant's remaining ability to work despite his impairment. See Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997).

If a claimant meets his or her burden at the fourth step, it then becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v.

_Heckler_, 764 F.2d 834, 836 (11th Cir. 1985).  If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled.  _Jones v. Apfel_, 190 F.3d 1224, 1228 (11th Cir. 1999).  _See also_ _Hale v. Bowen_, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing _Francis v. Heckler_, 749 F.2d 1562, 1564 (11th Cir. 1985)).

## VI.  <u>Discussion</u>

> **Substantial evidence supports the Residual Functional Capacity ("RFC") for less than the full range of light work with the stated restrictions, as well as the ALJ's assignment of weight to the opinions of Plaintiff's treating physician.[4]**

In her brief, Plaintiff argues that the ALJ's RFC for less than the full range of light work is not supported by substantial evidence and that the ALJ erred in failing to assign controlling weight to the opinions of her treating physician, Dr. Huey Kidd, M.D.  (Doc. 13 at 2).  The Government counters that the RFC is fully supported by the substantial evidence and that the ALJ assigned the proper weight to Dr. Kidd's opinions, as they are conclusory and inconsistent with his own treatment notes, as well as the remaining objective record evidence.  (Doc. 14 at 4-7).  Having reviewed the record at length, the Court finds that Plaintiff's claims are without merit.

---

[4] Because Issues 1 and 2 are interrelated, the Court will discuss them together.

Residual functional capacity is a measure of what Plaintiff can do despite his or her credible limitations. See 20 C.F.R. § 404.1545. Determinations of a claimant's RFC are reserved for the ALJ, and the assessment is to be based upon all the relevant evidence of a claimant's remaining ability to work despite his or her impairments, and must be supported by substantial evidence. See Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546 and Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)); Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, *10, 2012 WL 997222, *4 (M.D. Ala. March 23, 2012). Once the ALJ has determined the claimant's RFC, the claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence. See Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985). Plaintiff has failed to meet her burden in this case.

As stated, Plaintiff argues that the ALJ erred in failing to give controlling weight to the opinions of her treating physician, Dr. Kidd. As part of the disability determination process, the ALJ is tasked with weighing the opinions and findings of treating, examining, and non-examining physicians. In reaching a decision, the ALJ must specify the weight given to different medical opinions and the reasons for doing so. See Winschel v. Commissioner of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). The failure to do so is reversible error. See

Williams v. Astrue, 2009 U.S. Dist. LEXIS 12010, *4, 2009 WL 413541, *1 (M.D. Fla. 2009).

When weighing the opinion of a treating physician, the ALJ must give the opinions "substantial weight," unless good cause exists for not doing so. Costigan v. Commissioner, Soc. Sec. Admin., 2015 U.S. App. LEXIS 2827, *10, 2015 WL 795089, *4 (11th Cir. Feb. 26, 2015) (citing Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) and Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985)). The opinion of "a one-time examining physician — or psychologist" is not entitled to the same deference as a treating physician. Petty v. Astrue, 2010 U.S. Dist. LEXIS 24516, *50, 2010 WL 989605, *14 (N.D. Fla. Feb. 18, 2010) (citing Crawford, 363 F.3d at 1160). Also, an ALJ is "required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'" Milner v. Barnhart, 275 Fed. Appx. 947, 948 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1527(f)(2)(i)). "The ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources." Id. (citing Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991)).

Whether considering the opinions of treating, examining, or non-examining physicians, good cause exists to discredit the

testimony of *any* medical source when it is contrary to or unsupported by the evidence of record. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence." Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. 2012). The ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted); Adamo v. Commissioner of Soc. Sec., 365 Fed. Appx. 209, 212 (11th Cir. 2010) (The ALJ may reject any medical opinion if the evidence supports a contrary finding.).

In the instant case, the ALJ found that Plaintiff has the severe impairments of degenerative disc disease, carpal tunnel syndrome, obesity, restless leg syndrome, and post-traumatic stress disorder with anxiety and depression.[5] (Doc. 12-2 at 19). The ALJ also determined that Plaintiff has the RFC to perform less than the full range of light work with the following restrictions: Plaintiff can lift and/or carry 20 pounds occasionally and 10 pounds frequently; she can sit, stand, walk

---

[5] Plaintiff's arguments in this case are directed at the ALJ's findings related to her physical impairments. Therefore, the Court's discussion focuses on those impairments.

for a total of 6 hours in an 8-hour day[6]; she can push and pull up to her lifting and carrying limitations; she can occasionally handle, finger, and feel on her left hand; she can occasionally climb ramps and stairs but must avoid climbing ladders and scaffolds; she can frequently stoop, kneel, crouch, and crawl; environmentally, she must avoid unprotected heights; she is limited to performing simple, routine, and repetitive tasks; and she can have only occasional contact with the public. (Doc. 12-2 at 21).

Based upon the testimony of the vocational expert, the ALJ concluded that Plaintiff is not able to perform her past relevant work, but that she can perform other work such as food preparation worker, inserting machine operator, and box printer (all light and unskilled). (Doc. 12-2 at 28, 59-60). Thus, the ALJ found that Plaintiff is not disabled. Having reviewed the evidence at length, the Court is satisfied that the ALJ's findings related to Plaintiff's RFC and the weight accorded to

---

[6] At first blush, the ALJ's use of the phrase, "can sit, stand, walk for a total of 6 hours in an 8-hour day," appeared problematic. However, the Court has reviewed the ALJ's decision at length and the hypothetical question posed to the vocational expert, in which the ALJ clearly asked the VE to assume that the Plaintiff could sit for at least 6 hours in an 8-hour work day **and** stand/walk in combination for at least 6 hours in an 8-hour work day. (Doc. 12-2 at 59). Therefore, the Court is satisfied that the phrase is not meant to convey that Plaintiff is only able to sit, stand, and walk in combination for a total of 6 hours in an 8-hour work day.

the opinions of Plaintiff's treating physician are supported by substantial evidence.

First, with respect to Plaintiff's treating physician, Dr. Kidd, the record shows, as the ALJ found, that Dr. Kidd's opinions were inconsistent with his own treatment records. Dr. Kidd's treatment records, as a whole, are very terse. They begin on December 11, 2013, at which time Dr. Kidd treated Plaintiff for chronic lower back pain and anxiety. He noted that Plaintiff was ambulatory and was experiencing moderate anxiety. (Doc. 12-7 at 252). Dr. Kidd refilled Plaintiff's prescriptions for Norco, Xanax, and Zanaflex and recorded few examination findings. [7] (Id.).

Plaintiff returned to Dr. Kidd the following month, on January 27, 2014, after being involved in a car accident a few days earlier. She requested that her stitches be removed and that her medications be refilled. (Doc. 12-7 at 250). Dr. Kidd diagnosed arthritis, headaches, depression, anxiety, and chronic pain. (Id.). Plaintiff's physical examination findings on that date reflected bruising and lacerations to her head and bruising to her shoulders from the accident. (Id. at 251). Dr. Kidd

---

[7] An x-ray of Plaintiff's lumbar spine taken on August 15, 2013, showed moderate disc space narrowing, endplate sclerosis and spurring at the L2-3 level, and less severe degenerative change at the L3-4 level, with no loss of height or gross malalignment of the lumbar vertebral bodies. The assessment was no acute osseous abnormality and degenerative change. (Doc. 12-7 at 68).

noted, "shoulders showed no abnormalities," and "able to move upper arm/shoulder without difficultly." (Id.).

Plaintiff returned on February 10, 2014, seeking refills of her medication. (Doc. 12-7 at 249). Dr. Kidd noted that she was "feeling better" and working part-time. (Id.). Dr. Kidd recorded no relevant physical examination findings but assessed fracture of facial bones, lumbar radiculopathy, and chronic pain. (Doc. 12-7 at 249-50).

The following month, on March 13, 2014, Plaintiff reported that she had been depressed since her car accident and that she had pain radiating to her legs. (Id. at 245). Dr. Kidd assessed lumbar radiculopathy, chronic pain, and bipolar disorder. (Id. at 247). Dr. Kidd's notes reflect that Plaintiff was ambulatory, that she had a muscle spasm in her back, and that she exhibited normal reflexes. (Id. at 245-47). Dr. Kidd released Plaintiff to go back to work on that date. (Id. at 245-47).

On April 18, 2014, Plaintiff returned to Dr. Kidd with complaints of moderate chronic lower back pain that worsened with stooping and bending. Plaintiff reported, however, that her pain medication was effective. Dr. Kidd's examination findings included no swelling, normal posture, normal gait and normal stance, and no acute distress. (Doc. 12-7 at 243).

On May 15, 2014, Plaintiff presented for refills of her medication, and Dr. Kidd made essentially no physical examination

findings.  (Doc. 12-7 at 240-42).  The following day, on May 16, 2014, Dr. Kidd completed a Physical Capacities Evaluation form, opining that Plaintiff can sit for only two hours in an eight-hour work day, can stand/walk for one hour, can lift/carry up to ten pounds, and can never bend, squat, crawl, or climb.  (Doc. 12-7 at 231).  Dr. Kidd also completed a Clinical Assessment of Pain form and therein opined that Plaintiff cannot engage in any form of substantial gainful employment due to chronic lower back pain.  (Doc. 12-7 at 232).  The record shows that Plaintiff continued to see Dr. Kidd from June 2014 to January 2015 for medication refills.  (Doc. 12-7 at 234-40, 312-17).

While there is no question that Plaintiff has the severe impairment of degenerative disc disease which has resulted in chronic low back pain as diagnosed by Dr. Kidd, Dr. Kidd's treatment records reflect largely conservative treatment with medication and essentially unremarkable examination findings, which are inconsistent with the debilitating limitations contained in the Physical Capacities Evaluation and Clinical Assessment of Pain forms completed by Dr. Kidd.  Indeed, Dr. Kidd's treatment notes reflect that Plaintiff's pain medication was effective and that Dr. Kidd released Plaintiff to return to work a mere two months before completing the Physical Capacities Evaluation and Clinical Assessment of Pain forms.  (Doc. 12-7 at 243, 245).

In addition to being inconsistent with his own records, Dr. Kidd's opinions are inconsistent with Plaintiff's treatment records from Dr. Rassan Tarabein, M.D., of the Eastern Shore Neurology and Pain Center. (Doc. 12-7 at 256). Plaintiff was treated by Dr. Tarabein for four months, from September 2014 to January 2015. Dr. Tarabein's records, which reflect significant improvement in Plaintiff's pain during the four-month treatment period, are inconsistent with the severe limitations listed in the Physical Capacities Evaluation and Clinical Assessment of Pain forms completed by Dr. Kidd. (Doc. 12-7 at 253-97).

Specifically, the record reflects that on September 23, 2014, Plaintiff reported to Dr. Tarabein that she developed severe neck and back pain, as well as headaches, blurry vision, and dizziness as a result of a car accident in January 2014. (Doc. 12-7 at 294). Dr. Tarabein noted severe tenderness in Plaintiff's lower back area and shoulder joints, instability while walking/standing, and severely restricted range of motion in the shoulders. (Id. at 295). A musculoskeletal examination during the same visit revealed normal muscle strength throughout (5/5), normal muscle bulk and tone, with no fasciculation or atrophy, and no spasms. (Id. at 296-97). Dr. Tarabein also noted that x-rays indicated abnormal degenerative disc disease and possible spinal stenosis. (Id. at 298). Dr. Tarabein recommended additional testing to determine the cause of

Plaintiff's headaches and dizziness. He instructed Plaintiff to return in one week and to exercise as tolerated. (Id. at 298).

Plaintiff returned to Dr. Tarabein several times during September and October 2014. She reported inattentiveness, dizziness, blurred vision, and imbalance. Dr. Tarabein performed a series of tests to evaluate each of these symptoms, all of which were normal. (Id. at 285-86, 289-90). On October 9, 2014, Plaintiff also complained of back and neck pain. (Doc. 12-7 at 276). Dr. Tarabein noted radicular pain with mild deficit, diffused tenderness in the lumbar facets, painful numbness in both hands, and diffused spasms in the neck. (Id. at 276). He performed tests to evaluate the possibility of carotid disease, the results of which were normal. (Id. at 277). He also performed nerve conduction studies of the upper and lower extremities to evaluate Plaintiff's cervical and lumbar radicular pain. The results were mild to moderate C7-C8/L4-L5 radiculitis, with some evidence of early stage radiculopathy, mild to moderate CTS and peripheral neuropathy. (Id. at 278). Dr. Tarabein's conclusion was possible neuropathy, possible spinal stenosis, and abnormal degenerative disc disease. (Id.).

Plaintiff returned to Dr. Tarabein on October 29, 2014. She reported lumbar pain, which she rated as 8/10 on the pain scale. Plaintiff denied any complications from her medications and reported that she could perform her activities of daily living.

(Id.).  Plaintiff's physical examination findings on that date included normal head, neck, and cervical spine, full range of motion in upper and lower extremities bilaterally, good posture, normal spinal alignment, decreased range of motion (50% of normal) in the lumbar spine with moderate tenderness and spasm, decreased range of motion (75% of normal) in the cervical spine with moderate tenderness and mild spasm, normal gait and station, normal reflexes, normal coordination, normal motor bulk, tone, and normal strength.  (Id. at 272-73).  Dr. Tarabein diagnosed lumbar and cervical disc displacement, and continued Plaintiff on her medications.  He also instructed her to return in one month. (Id.).

Plaintiff returned to Dr. Tarabein on November 10, 2014, complaining of "mild to moderate back and neck pain."  Plaintiff also reported that "today is better, meds are helping some[,] [and] keeping pain within tolerance."  (Doc. 12-7 at 265).  Dr. Tarabein noted that Plaintiff described her back pain as "chronic and improving," and her neck pain, headache, and myalgias as "improving and intermittent."  (Id. at 265).  Plaintiff's musculoskeletal examination findings on that date included "patient complained of tenderness" and back and neck pain, muscle strength "5/5 strength throughout," normal muscle bulk and tone, no atrophy, no spasms, and normal reflexes.  (Id. at 265, 267-68).

Plaintiff returned to Dr. Tarabein on December 11, 2014, with complaints of back pain.[8] (Doc. 12-7 at 259). Dr. Tarabein noted "evidence of spondylosis" and administered facet injections, which he described as non-invasive, conservative pain management. He noted that Plaintiff reported that previous injections had been of tremendous help and alleviated more than 70% of her spinal pain. (Id. at 260). Plaintiff was instructed to return in one month and to exercise as tolerated. (Id.).

Plaintiff presented to Dr. Tarabein/Eastern Shore Neurology and Pain Center for a final follow up examination on January 12, 2015. She reported chronic lumbar and cervical pain. On that date, she was examined by Stan White, FAAN (Fellow, American Academy of Nursing).[9] (Doc. 12-7 at 256). Despite her reported pain, Plaintiff reported that she could complete her activities of daily living. (Id.). A physical examination of Plaintiff on that date reflected: normal neck (no swelling, normal appearance, and non-tender), normal cervical spine, full range of motion in upper and lower extremities bilaterally, good posture, normal spinal alignment, cervical range of motion reduced to 75% of

---

[8] Imaging completed on December 2, 2014, of Plaintiff's lumbar spine showed normal spinal alignment, disc degradation with annular bulge, discogenic endplate changes at several levels, and facet joint arthropathy. (Doc. 12-7 at 263). Imaging of the cervical spine was unremarkable. (Doc. 12-7 at 264).

[9] Dr. Tarabein reviewed and agreed with Mr. Smith's assessment. (Doc. 12-7 at 256).

normal, with moderate tenderness and spasm, lumbar range of motion reduced to 50% of normal with severe facet tenderness at L2 to L5 and spasm, normal hips, normal gait, normal reflexes, normal coordination, and normal motor bulk and tone. (Id. at 255). Plaintiff was given Toradol and Gabapentin and instructed to continue home therapy and return in four weeks. (Id.). This is the final treatment note from Dr. Tarabein.

Again, there is no question that Plaintiff has the severe impairment of degenerative disc disease, as diagnosed by Dr. Kidd and Dr. Tarabein, and that as a result of said impairment, she experiences chronic low back and neck pain. However, Dr. Tarabein's treatment notes reflect that his pain management regimen, which he described as conservative and non-invasive, resulted in significant improvement of Plaintiff's pain symptoms, particularly after she received the facet injections. (Doc. 12-7 at 260, 265). In addition, while there is no question that Dr. Tarabein documented decreased range of motion in Plaintiff's lumbar and cervical spine, Dr. Tarabein's treatment records also reflect that Plaintiff was able to complete her activities of daily living despite these limitations and that she had full range of motion in her upper and lower extremities bilaterally, good posture, normal spinal alignment, normal gait and station, normal coordination, normal motor bulk, tone, muscle strength 5/5 throughout, no atrophy, no spasms, and normal reflexes. (Id. at

256, 265, 267-68, 272-73). In sum, Dr. Tarabein's treatment records reflect successful, conservative pain management treatment for Plaintiff's neck and back condition with medications and injections, and that, with the exception of some decreased neck and back range of motion, she has had largely normal examination findings. As the ALJ found, these treatment records are inconsistent with the severe limitations listed by Dr. Kidd in the Physical Capacities Evaluation and Clinical Assessment of Pain forms he completed.

In addition, Dr. Kidd's opinions are at odds with the consultative report of Dr. Antonio Graham, D.O., dated October 19, 2013. Plaintiff reported to Dr. Graham that she can dress herself, drive, and do household chores in short intervals with multiple breaks, including sweeping, shopping, mopping, vacuuming, cooking, and washing dishes. (Doc. 12-7 at 77-78). Upon examination, Dr. Graham noted that Plaintiff had "some slight difficulty ambulating" (although he described her gait as normal without an assistive device); she was able to get on and off the exam table and up and out of the chair; she had normal range of motion in her elbow, forearm, wrist, shoulder, cervical spine, hip, knee, and ankle; she had decreased range of motion in the lumbar spine; she had a normal straight leg raise, normal squat, and was able to walk on her heels, but she needed assistance to walk on her toes due to balance; she had normal

motor strength (5/5 in lower extremities), and normal reflexes. (Id. at 78-79). Dr. Graham's overall impression was: normal range of motion of the arms with some minor decrease in her functional status due to arm pain from a fall in 2004; back pain with range of motion exercises, but no limitations in range of motion; imaging studies suggest moderate disc disease at L2-L3, but negative straight leg raise in supine and sitting positions; and no limitations due to restless leg syndrome. (Id. at 80). Dr. Graham concluded that "this patient does have some impairment to her activity; however, with some modifications of type of employment and work that she could do, the patient most likely could find some work to accommodate her limitations." (Id. at 80). Like Dr. Tarabein, Dr. Graham's opinions are inconsistent with the severe limitations included by Dr. Kidd in the Physical Capacities Evaluation and Clinical Assessment of Pain forms he completed.[10]

---

[10] As discussed, the ALJ accommodated Plaintiff's limitations in the RFC as follows: Plaintiff can perform less than the full range of light work with the following restrictions: Plaintiff can lift and/or carry 20 pounds occasionally and 10 pounds frequently; she can sit, stand, walk for a total of 6 hours in an 8-hour day she can push and pull up to her lifting and carrying limitations; she can occasionally handle, finger, and feel on her left hand; she can occasionally climb ramps and stairs but must avoid climbing ladders and scaffolds; she can frequently stoop, kneel, crouch, and crawl; environmentally, she must avoid unprotected heights; she is limited to performing simple, routine, and repetitive tasks; and she can have only occasional contact with the public. (Doc. 12-2 at 21).

The severe limitations included by Dr. Kidd in the Physical Capacities Evaluation and Clinical Assessment of Pain forms he completed are also inconsistent with Plaintiff's activities of daily living, which include taking care of her own personal needs, preparing simple meals daily, doing most household chores at a slow pace, walking, driving, and riding in a car, shopping at the grocery store, taking care of her own finances, reading and writing daily, and socializing with friends and family. (Doc. 12-6 at 32-35). Again, while there is no question that Plaintiff has limitations from her degenerative disc disease that results in neck and back pain, the record supports the ALJ's determination that the severe limitations expressed by Dr. Kidd are inconsistent with the substantial evidence in this case, as detailed above. Therefore, the ALJ had good cause to discredit those opinions.

The Court further finds, based on the evidence detailed above, that substantial evidence supports the ALJ's finding that Plaintiff has the RFC to perform less than the full range of light work, with the stated restrictions. Indeed, Plaintiff has failed to show that any limitations caused by her impairments exceed the RFC and are not accommodated by the RFC and its stated restrictions. Accordingly, Plaintiff's claim must fail.[11]

---

[11] Although Plaintiff has cited evidence in the record which she claims supports a finding that she is disabled, that is, at best, a contention that the record evidence supports a different

## VII.  Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **AFFIRMED**.

**DONE** this **27th** day of **March, 2018.**

_____
**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**

---

finding.  That is not the standard on review. The issue is not whether there is evidence in the record that would support a different finding, but whether the ALJ's finding is supported by substantial evidence.  See Figueroa v. Commissioner of Soc. Sec., 2017 U.S. Dist. LEXIS 181734, *15-16, 2017 WL 4992021, *6-7 (M.D. Fla. Nov. 2, 2017) ("Although Plaintiff cites to certain test results, notes, and physical therapy findings as support for her contention that 'there were objective medical findings that support the doctor's opinions about [her] limitations' . . ., this is, at best, a contention that the record could support a different finding. This is not the standard on review. The issue is not whether a different finding could be supported by substantial evidence, but whether this finding is.").